**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2168-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ZENG L. CHEN, a/k/a ZENG
CHEN and ZENG B. CHEN,

    Defendant-Appellant.

_____

Submitted May 27, 2026 – Decided July 2, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 10-10-1964.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson and Ruth E. Hunter, Designated Counsels, on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Shiraz Deen, Special Deputy Attorney General, on the briefs).

PER CURIAM

Defendant Zeng L. Chen appeals the January 6, 2026 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In 2015, defendant was convicted by a jury on two counts of felony murder, a single count of knowing/purposeful murder, armed robbery, burglary, and possession of a knife for an unlawful purpose, and was sentenced to life imprisonment. On direct appeal, we affirmed the convictions and sentence, State v. Chen, No. A-4929-14 (App. Div. Apr. 12, 2018) (Chen I), and the New Jersey Supreme Court denied certification. State v. Chen, 235 N.J. 449 (2018).

We presume the parties are fully familiar with the facts and procedural history from Chen I and defendant's first PCR. State v. Zeng Chen, No. A-2050-20 (App. Div. Feb. 1, 2022) (Chen II). However, to put the current arguments in context, we recount the pertinent facts and procedural history.

"On June 16, 2010, defendant and his co-defendant, Dong B. Lin, broke into the home of a former employer, . . . intending to steal money and other valuables. The victims, Yun Chen [(Yun)], and her brother, Yao Chen

[(Yao)],[1] were unexpectedly at home that afternoon." Chen II, (slip op. at 3). Upon entering, defendant and Lin, armed with "brass knuckles" and a "white-handled knife" respectively, spotted Yao, who they instructed to return to his room and "be quiet." Chen II, (slip op. at 3-4).

Lin then gave the white-handled knife to defendant, who used it to threaten Yao, while Lin searched for something to detain Yao with. Id. (slip op. at 4). While defendant kept Yao quiet, Lin went upstairs "to search for valuables"; upon finding Yun lying in bed, Lin "stabb[ed] her seventy-nine times in the" neck, chest, torso, abdomen, arms, and wrists. Ibid.

When defendant heard Yun screaming, "'[he] was pretty sure she was being killed.'" Chen I, (slip op. at 10); Chen II, (slip op. at 4). Yao, after hearing his sisters' screams, began to struggle and attempted to get free; to subdue Yao, defendant "repeatedly punched him in the head with brass knuckles[]" and "stuffed cloth in [his] mouth." Chen II, (slip op. at 3-4). Since he was struggling with Yao, defendant yelled up to Lin to come help. Id. (slip op. at 4-5).

When Lin returned downstairs, he stabbed Yao with the white-handled knife—which broke. Id. (slip op. at 5). Lin then "grabbed [a] kitchen knife and

---

1 Because the victims share a common surname, they are hereinafter identified by their first names for the sake of clarity. No disrespect is intended.

stabbed Yao seventy-four times in the face, neck, shoulder, chest, abdomen, and buttocks." Ibid.

Yao, resiliently, managed to exit the home and get onto South Street, where he eventually collapsed. Ibid. He was spotted by a motorist who called 9-1-1. An ambulance arrived and transported Yao to Jersey Shore University Medical Center, "where he died within the hour." Ibid.

Around 5:15 p.m., Freehold Police Department Lieutenant Todd "heard a report about a stabbing" where the suspects were described as "two-oriental males between 20 and 25 years old." Chen I, (slip op. at 2). Pursuant to that report, Lt. Todd "proceeded to Williams Street where he saw two persons matching the [suspects'] description." Id. at 2-3. At this time, defendant and Lin were "apparently walking toward the bus station." Chen II, (slip op. at 5-6). After observing that the suspects had blood on their pants and hands, Lt. Todd took them to the police station to be interrogated. Chen I, (slip op. at 3).

During interrogation, defendant admitted to punching Yao and threatening him with a knife; however, he "denied knowing Lin was going to kill the victims[.]" Chen II, (slip op. at 6); see also Chen I, (slip op. at 11) (denying killing anyone but admitting to punching Yao with brass knuckles, holding him down, and covering his mouth). Instead, defendant maintained that he and Lin

4

only intended to "'threaten'" the victims. Chen II, (slip op. at 6). Lin's testimony confirmed that he and defendant discussed using the knife to threaten someone who may be in the house. Id. (slip op. at 12). Lin further testified that when he began stabbing Yao, defendant held Yao down but "slowly walked behind" Lin after. Ibid.

Defendant and Lin were indicted by a Monmouth County grand jury in October 2010. Lin then moved to suppress his statement. Defendant also moved to dismiss certain counts of the indictment, but the court denied defendant's motion. In April 2012, defendant moved to sever the proceedings between himself and Lin; this motion was granted and the State opted to try Lin first. During this time, defendant retained a clinical psychologist as an expert concerning the defenses of duress and diminished capacity.

In December 2013, defendant moved to suppress his confession pursuant to Miranda.[2] In April 2014, the court denied defendant's motion, after hearing testimony on three dates.

In May 2014, the case, for the fourth time, was reassigned to a different judge. See Chen II, (slip op. at 2-3) (noting four reassignments). In December

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2168-23

2014, defendant moved for dismissal of his counsel and assignment of new counsel.

On January 13, 2015, the court entered an order dismissing count three—first-degree murder of Yun—from the indictment and denied defendant's attempt to dismiss his counsel. Thereafter, between January 20 and February 5, 2015, a trial was held on the remaining counts in the indictment.

Defendant then filed a direct appeal alleging the trial court: (1) erred in denying his motions to suppress, present expert testimony, and acquit; (2) issued improper jury instructions; and (3) imposed an excessive sentence. Chen I, (slip op. at 3). We affirmed. Ibid.

In December 2018, defendant filed a self-represented PCR petition asserting that his trial counsel rendered ineffective assistance by failing to move to dismiss the charges based on the four-and-a-half-year delay between his arrest and trial. After he appealed the denial of his PCR, we "vacate[d] and remand[ed] for the PCR court to make specific findings of fact and law under the Barker[3] test for speedy trial violations in the context of the two-pronged Strikland[4] test for PCR." Chen II, (slip op. at 2).

---

[3] Barker v. Wingo, 407 U.S. 514, 515 (1972).

[4] Strikland v. Washington, 466 U.S. 668, 687 (1984).

A-2168-23

On remand, defendant's PCR was denied. On appeal, we again remanded the matter for the PCR court to make additional factual and legal findings concerning defendant's claim that the delay violated his constitutional right to a speedy trial. State v. Zeng L. Chen, No. A-2168-23 (App. Div. Oct. 1, 2025) (Chen III).

On remand, on January 6, 2026, the PCR court issued a written order denying defendant's petition without an evidentiary hearing. In doing so, the court catalogued the various events it found caused the delays in this case. The court then determined that the delays attributable to the State were justified or excusable given the complex nature of the case, defendant's introduction of expert testimony, and the need to review forensic analysis. The court found that the delays attributable to the court were excusable because of the delays related to either judicial reassignments or scheduling conflicts. Importantly, the court found that most of the delay in trial was attributable to defendant, and his co-defendant, filing numerous motions. The court then concluded defendant had not shown that his counsel's performance, in not seeking dismissal, was so deficient that it violated the Sixth Amendment, or that he was prejudiced by the counsel's failure to file a speedy trial motion.

7

On appeal, defendant raises the following contention for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ON SPEEDY TRIAL GROUNDS WITHOUT HOLDING AN EVIDENTIARY HEARING AFTER THIS COURT REMANDED TWICE FOR ADDITIONAL FINDINGS. THE PCR COURT'S ADDITIONAL FINDINGS WERE NOT SUPPORTED BY OBJECTIVE EVIDENCE IN THE RECORD AND THEREFORE, AN EVIDENTIARY HEARING BEFORE A DIFFERENT JUDGE IS NECESSARY IN ORDER TO MAKE CONCLUSIONS SUPPORTED BY THE RECORD AND TO RESOLVE MATERIAL ISSUES OF DISPUTED FACTS.

II.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)); State v. Afanador, 151 N.J. 41, 49 (1997). PCR provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). Because the court did not hold an evidentiary hearing, we review both the factual inferences drawn by the judge from the record and the judge's legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338

(App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)).

To prevail on his ineffective assistance of counsel claim, defendant has the burden of satisfying the Strickland/Fritz test. See State v. Nunez-Valdez, 200 N.J. 129, 139-40 (2009); State v. Buonadonna, 122 N.J. 22, 41 (1991). Pursuant to Strickland, defendant must prove that: (1) counsel's performance was deficient to the extent they were not functioning as counsel guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42 (1987) (adopting the Strickland test); State v. Savage, 120 N.J. 594, 612-13 (1990) ("to evaluate [ineffective assistance of counsel], we turn first to the constitutional standards set forth in [Strickland][] and adopted by this Court in [Fritz]"); State v. Castagna, 187 N.J. 293, 313-14 (2006) (explaining the Strickland/Fritz test).

A defendant can satisfy the first prong of the Strickland/Fritz test by "showing that counsel's acts or omissions fell outside the wide range of professional competent assistance." State v Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Furthermore, where counsel's performance

prejudices a defendant and deprives them of a fair trial, the second Strickland/Fritz prong is satisfied. Fritz, 105 N.J. at 58.

To satisfy his burden and "establish a prima facie claim, [defendant] must do more than make bald assertions . . . ." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Instead, "defendant must demonstrate a reasonable likelihood that his . . . claim . . . will ultimately succeed on the merits." R. 3:22-10(b); see also State v. Brewster, 429 N.J. Super. 387, 392 (App. Div. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Further underpinning this analysis is the presumption that an attorney's conduct "constituted reasonable professional assistance." State v. Petrozelli, 351 N.J. Super. 14, 21-22 (App. Div. 2002). Nevertheless, Rule 3:22-10(b) stipulates the facts of the record are viewed in the light most favorable to defendant.

Here, defendant's ineffective assistance of counsel claim is predicated on an alleged infringement of his right to a speedy trial—which is protected by the Sixth Amendment. State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)); see also Barker, 407 U.S. at 515 ("[t]he right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States").

> In Barker, the United States Supreme Court announced
> a four-part test to determine when a delay infringes

upon a defendant's due process rights. <u>Courts must consider and balance the "[l]ength of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant</u>."

[<u>State v. Tsetsekas</u>, 411 N.J. Super. 1, 8 (App. Div. 2009) (quoting <u>Barker</u>, 407 U.S. at 530) (alteration in original) (emphasis added) (internal citation omitted).]

<u>See also</u> <u>State v. Szima</u>, 70 N.J. 196, 200-01 (1976) (adopting the <u>Barker</u> four-part test). In conducting this analysis, courts must remain cognizant that "[n]o single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial"; conversely, each factor "must be considered in light of the relevant circumstances of each particular case." <u>Tsetsekas</u>, 411 N.J. Super. at 10 (citing <u>Barker</u>, 407 U.S. at 533); <u>see also</u> <u>State v. Cahill</u>, 213 N.J. 253, 271 (2013) ("facts of an individual case are the best indicators of whether a right to a speedy trial has been violated").

In <u>Cahill</u>, the New Jersey Supreme Court expressed that "once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining <u>Barker</u> factors." <u>Cahill</u>, 213 N.J. at 265-66 (citing <u>State v. Smith</u>, 131 N.J. Super. 354, 361-70 (App. Div. 1974), <u>aff'd o.b.</u>, 70 N.J. 213 (1976); <u>Hakeem v. Beyer</u>, 990 F.2d 750, 760 (3d Cir. 1993)). However, "the question of how long is too long 'cannot be answered by sole reference to the lapse of a specified

A-2168-23

amount of time . . . .'"  State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting Smith, 131 N.J. Super. at 360) (omission in original).

The State, in delaying completion of prosecution, can violate a defendant's right to a speedy trial.  State v. Farrell, 320 N.J. Super. 425, 445-46 (App. Div. 1999) (citing State v. Gallegan, 117 N.J. 345, 354-55 (1989)); see also State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) ("[a] defendant has no duty to bring himself to trial; the State has that duty[.]" (quoting Barker, 407 U.S. at 527)).  Indeed, the State cannot employ purposeful delay tactics.  Barker, 407 U.S. at 531.

That said, reasonable delays—"however great the delay"—will not infringe the right to a speedy trial to the extent defendant cannot show prejudice. Doggett v. United States, 505 U.S. 647, 656 (1992).  That principle is premised on the notion that extended delays are more "tolerated for serious offenses or complex prosecutions."  Cahill, 213 N.J. at 265-66.  Moreover, delays caused by the defense cannot evidence a violation of the right to a speedy trial.  See State v. Long, 119 N.J. 439, 470 (1990) ("Any delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation" (quoting Gallegan, 117 N.J. at 355)).

Lastly, if a defendant's right to a speedy trial is violated, "[t]he only remedy that will address this violation is dismissal of the charge." Cahill, 213 N.J. at 276. Determinations regarding an allegation of a speedy trial violation are typically upheld insofar as the PCR court's decision was not "clearly erroneous." Tsetsekas, 411 N.J. Super. at 10 (citing Merlino, 153 N.J. Super. at 17). But see State v. Handy, 206 N.J. 39, 45 (2011) ("appellate review of legal determinations is plenary" (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995))).

Defendant's assertion that the PCR court's findings about the causes of delay were made without any support in the record is without merit. The PCR court was tasked with "catalog[ing] the delay periods, acknowledg[ing] any dates, [and] attribut[ing] the specific delay periods to the prosecution, the defense, or the court." Chen III, (slip op. at 4). The PCR court accomplished this task.

Defendant's challenge that eleven periods of delay decided by the PCR court failed to comport with our remand instructions is also without merit. Regarding these delays, the PCR court specifically analyzed each delay using credible evidence in the record to determine whom the delay would be

attributable to and whether the delay was reasonable. For example, the court found:

> Between [d]efendant's arrest on June 16, 2010, and indictment on October 18, 2010, the delay would be attributable to the prosecution but is excusable, as those roughly four months were spent gathering sufficient evidence for presentment to a grand jury as well as convening a grand jury . . . . From October 18, 2010[,] to November 10, 2010, it appears Lin and his attorney had decided to file a motion to suppress . . . . Because [d]efendant and Lin remained co-defendants, . . . this period of delay would be attributable to the defense . . . .
>
> Between November 10, 2010[,] and February 25, 2011, this approximately three and a half month period of delay would be attributable to the defense for a number of reasons. First, Lin's motion to suppress . . . would have required[] . . . a briefing schedule set by the court with counsel's input . . . . Because [d]efendant and Lin were still intended to be tried together . . ., this period of delay is attributable to the defense because the defense filed that motion, thereby causing the delay.

The same type of analysis was completed for each of the other periods of delay. Contrary to defendant's claims, the findings about the causes of the delay were based on evidence in the record.

Moreover, the PCR court did not err regarding its analysis of Barker; the PCR court properly analyzed the reasons for each delay. Primarily: (1) delays attributable to the State were pursuant to the complex nature of the charges

14

against defendant, the need to review expert testimony, and forensic analysis; (2) delays attributable to the court were either justified or excusable considering multiple reassignments and conflicts between trial counsel's and the court's schedule; and (3) much of the delay was attributable to the defendant, and his co-defendant pre-severance, filing multiple motions. Those findings comport with our instruction to consider: "(1) the seriousness of the crimes; (2) the complexity and logistical challenges of an investigation that required forensic analysis; (3) the number of judges assigned to preside over various events; and (4) numerous pretrial motions defendant filed, including his successful severance motion." Chen II, (slip op. at 15-16).

With respect to the third Barker prong, defendant provided no evidence that he had ever asked to accelerate the trial date or asserted his speedy trial rights on the record. Although counsel mentioned at PCR oral argument that defendant himself asserted his right to a speedy trial, this is not competent evidence to support a prima facie case on this matter. See R. 3:22-10(c).

Defendant also argues the court erred by not having an evidentiary hearing to determine issues of material fact, such as why four different judges were assigned to the case. Entitlement to an evidentiary hearing requires a: (1) prima facie case; (2) court's determination that material facts are in dispute; and (3)

determination that an evidentiary hearing is necessary to resolve the claim. R. 3:22-10(b); State v. Marshall, 148 N.J. 89, 158 (1997); Preciose, 129 N.J. at 462. Where the facts of a PCR petition lie outside the record and may require a previous attorney's testimony, the petition is more likely to warrant an evidentiary hearing. Preciose, 129 N.J. at 462. We are satisfied the PCR court properly denied defendant's petition for PCR without conducting an evidentiary hearing.

Defendant engaged in substantial motion practice which caused the bulk of the trial delay. In addition, as the court correctly determined, defendant failed to establish prejudice caused by the delay. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990).

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

16